Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6779 | **DATE** | July 8, 2002 |
| **CASE TITLE** | Daniel Greenberg, et al  v  Miami Children's Hospital, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Memorandum opinion and order entered. Accordingly, the Court *sua sponte* orders this action transferred to the USDC for the Southern District of Florida. Defendants' motion to dismiss and plaintiffs' motion to strike affidavit are denied without prejudice as moot.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| X | Notices mailed by judge's staff. | | JUL 1 6 2002 | |
| | Notified counsel by telephone. | | date docketed | 31 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 02 JUL 15 PM 2:55 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL GREENBERG, FERN KUPFER, )
FRIEDA EISEN, DAVID GREEN, CANAVAN )
FOUNDATION, DOR YESHORIM, and )
NATIONAL TAY-SACHS AND ALLIED )
DISEASES ASSOCIATION, INC., )
)
Plaintiffs, )
) No. 00 C 6779
v. )
) Judge Robert W. Gettleman
MIAMI CHILDREN'S HOSPITAL RESEARCH )
INSTITUTE, INC., VARIETY CHILDREN'S )
HOSPITAL d/b/a Miami Children's Hospital, )
and REUBEN MATALON, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

This case arises from a noble pursuit by the parties to detect and someday cure a fatal genetic disorder called Canavan disease. Before the court are a motion to dismiss for lack of personal jurisdiction and venue filed by defendant Miami Children's Hospital Research Institute, Inc. and defendant Variety Children's Hospital, d/b/a Miami Children's Hospital (collectively "Children's Hospital"),[1] motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, or in the alternative, to transfer venue of the case pursuant to 28 U.S.C. § 1404(a) filed by Children's Hospital and defendant Reuben Matalon ("Matalon"), and plaintiffs' motion to strike the affidavit of Steven Melnick. Because the court finds merit with Children's Hospital's motion to dismiss for lack of personal jurisdiction and

---

[1] While Children's Hospital moved to dismiss for lack of personal jurisdiction and venue pursuant to Rule 12(b)(6), the court recognizes that these motions are properly considered made pursuant to Fed. R. Civ. P. Rules 12(b)(2) and 12(b)(3).

lack of venue, in the interests of justice, the court *sua sponte* transfers venue of this case pursuant to 28 U.S.C. § 1406(a), to the Southern District of Florida where the court will have personal jurisdiction and venue over all parties to this action.[2]

## **BACKGROUND**

Plaintiffs Daniel Greenberg ("Greenberg"), Fern Kupfer ("Kupfer"), Frieda Eisen ("Eisen"), David Green ("Green"), Canavan Foundation, Dor Yeshorim and National Tay-Sachs & Allied Diseases Association, Inc. ("NTSAD"), sued Children's Hospital and Matalon, alleging diversity jurisdiction under 28 U.S.C. § 1332. The individual plaintiffs are parents of children afflicted with Canavan disease, a fatal, incurable, genetic disorder that occurs most frequently in Ashkenazi Jewish families. Defendants are a physician/researcher, a Children's hospital and the hospital's research affiliate. While Greenberg is an Illinois resident, all six other plaintiffs are citizens of different states including Iowa, New York, Virginia and Massachusetts. Defendant Matalon is a citizen of Texas, and Children's Hospital are citizens of Florida.

The complaint alleges that in 1987 there was no way to identify who was a carrier of Canavan disease, nor was there a way to identify a fetus inflicted with Canavan disease. Greenberg approached Matalon, a research physician who was at that time affiliated with the University of Illinois at Chicago ("UIC"), provided him with information about Canavan and requested his involvement in discovering the gene associated with Canavan disease so that tests could be performed to determine carriers and allow for prenatal testing for the disease. Over the next seven years, Greenberg provided Matalon with tissue and blood samples from members of

---

[2] Much of the delay in ruling on the instant motions resulted from extended settlement conferences with the parties. Despite good faith and extensive efforts by all concerned, however, the parties were unable to reach a settlement.

2

his family, and following the death of his son afflicted with Canavan, provided Matalon with tissue samples from his diseased son's brain and other major organs. During that time, in 1990, Matalon moved his research to Children's Hospital. The other individual plaintiffs from jurisdictions outside Illinois, and Dor Yeshorim, a New York corporation, supplied Matalon with blood, tissue and urine samples beginning in the late 1980s. Plaintiffs Greenberg, Green, Canavan and NTSAD facilitated Matalon's research on Canavan disease through monetary contributions.

The individual plaintiffs allege that they provided Matalon with such samples and confidential filial information "with the understanding and expectation that such samples and information would be used for the specific purpose of researching Canavan disease and identifying mutations in the Canavan gene which could lead to carrier detection within their families and benefit the population at large." Plaintiffs further allege that it was their "understanding that any carrier and prenatal testing developed in connection with the research for which they were providing essential support would be provided on an affordable and accessible basis, and that Matalon's research would remain in the public domain to promote the discovery of more effective prevention techniques and treatments and, eventually, to effectuate a cure for Canavan disease." Plaintiffs allege that this "understanding" was derived in part from "their experience in community testing for Tay-Sachs disease, another deadly genetic disease that occurs most frequently in families of Ashkenazi Jewish descent."

Plaintiffs allege that at no time were they informed that defendants intended to seek a patent on their research. Consistent with plaintiffs' understanding, Canavan Foundation launched a free testing program at Mt. Sinai Hospital in New York City. In September 1994,

3

unbeknownst to plaintiffs, Miami Children's Research Hospital applied for a patent on the Canavan disease gene and related applications which included carrier and prenatal testing. Matalon and his collaborators were listed as inventors and, through the patent, defendants acquired the ability to restrict any activity related to the Canavan disease gene. Plaintiffs first learned of this patent in November 1998 "when [Children's Hospital] revealed their intention to limit Canavan disease testing through a campaign of restrictive licensing of the patent." Plaintiffs allege that Children's Hospital has sent "enforcement letters" "threaten[ing]" centers offering Canavan testing that Children's Hospital "intended to enforce vigorously [their] intellectual property rights relating to carrier and patient DNA tests for Canavan Disease mutations," and have sought to "substantially restrict the number of laboratories authorized to conduct Canavan disease testing through exclusive licensing agreements." Plaintiffs allege that defendants have earned significant royalties from Canavan disease testing in excess of $75,000 through the enforcement of their gene patent, and that Matalon has personally profited by receiving a recent substantial federal grant to undertake research on the gene.

Based on these facts, plaintiffs filed a six-count complaint against defendants asserting the following causes of action: 1) lack of informed consent; 2) breach of fiduciary duty; 3) unjust enrichment; 4) fraudulent concealment; 5) conversion; and, 6) misappropriation of trade secrets. Plaintiffs generally seek a permanent injunction restraining defendants from enforcing their patent rights, and damages in the form of all royalties defendants have received on the patent as well as all financial contributions plaintiffs made to benefit defendants.

## **PERSONAL JURISDICTION**

Evaluating a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiffs bear the burden of establishing a prima facie case for personal jurisdiction. *See*, Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp. ("Reimer Express"), 230 F.3d 934, 939 (7th Cir. 2000); Steel Warehouse of Wisc. Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998). When determining personal jurisdiction over a defendant, the court can consider affidavits submitted by the parties, *see* Kontos v. U.S. Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987), and "must accept all undenied factual allegations and resolve all factual disputes in favor of the party seeking to establish jurisdiction." Saylor v. Dyniewski, 836 F.2d 341, 342 (7th Cir. 1988).

The court has jurisdiction over a non-resident, nonconsenting defendant in a diversity case if Illinois state courts would have jurisdiction. McIlwee v. ADM Industries, Inc., 17 F.3d 222, 223 (7th Cir.1994); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272 (7th Cir.1997). "The Illinois long-arm statute permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitution." Reimer Express, 230 F.3d at 940, *citing*, 735 Ill.Comp.Stat. 5/2-209(c). There are two types of jurisdiction, general and specific. If a defendant's contacts with the forum state are sufficiently "substantial[,] ... continuous and systematic," personal jurisdiction may exist for a cause of action unrelated to those contacts. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447-48 (U.S. 1952). If a nonresident defendant's contacts are not sufficient to support general jurisdiction, a defendant may still be subject to specific jurisdiction for claims arising out of or related to its "purposefully" directed activities within the state. Burger King v. Rudzewicz, 471 U.S. 462, 473 n. 15 (U.S. 1985).

In order to comport with due process, however, a defendant "must have 'minimum contacts' with Illinois such that maintaining this lawsuit does not offend 'traditional notions of fair play and substantial justice." FMC Corp. v. Varonos, 892 F.2d 1308, 1311 n. 5 (7th Cir.1990), *citing* International Shoe Co. v. Washington, 326 U.S. 310, 316 (U.S. 1945). Simply put, a defendant must have "purposefully availed" himself of the privilege of conducting activities within Illinois, such that he should "*reasonably anticipate* being hailed into court" here. Worldwide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (U.S. 1980) (*emphasis added*). Defendants may not be forced to defend this lawsuit in Illinois "solely as a result of random, fortuitous, or attenuated contacts" or because of the "unilateral activity of another party or third person." Burger King Corp., 471 U.S. at 475.

Children's Hospital argues that the complaint and underlying facts do not support this court's general or specific personal jurisdiction over Children's Hospital. Addressing general jurisdiction, defendants are Florida-not-for-profit corporations, with their principal places of business in Florida. With regard to specific jurisdiction, defendants argue that the "[c]omplaint only claims that the Children's Hospital wrongfully decided to patent the Canavan gene mutation and license the test for that mutation," and that none of "these activities allegedly occurred in Illinois." In their response, plaintiffs argue their challenge is not to defendants' patent, "but [to] its restrictive enforcement based on the parties' joint research efforts." Plaintiffs assert that this court has jurisdiction over Children's Hospital based on the following: 1) the effect on thousands of non-party Illinois residents who have been screened for the Canavan gene pursuant to defendants' restrictive patent terms; 2) the Illinois origin of Matalon's early research, and the idea for such research; 3) Matalon's affiliation with UIC; 4) defendants' solicitation and receipt

6

of tissue and financial contributions from Illinois; and, 5) defendants' solicitation of a consent form from Greenberg.

While not articulated as such, it appears that plaintiffs assert that the effect on non-party Illinois residents and defendants' enforcement of their patent rights and restriction of Canavan testing only to licensees that are located in Illinois constitutes defendants "doing business" in Illinois, sufficient to find general jurisdiction. Plaintiffs fail to cite a single case that supports the proposition that a forum has general personal jurisdiction over a foreign licensor based on the location of one or more of its licensees in the forum state. The single unreported case relied on by plaintiffs, Seltzer Sister Bottling Co., Inc. v. Source Perrier, S.A., No. C-90-1468 MHP, 1991 WL 279273 (N.D.Cal. May 1, 1991), is wholly distinguishable.

In Seltzer Sister Bottling, the court considered jurisdiction over a foreign manufacturer of bottled water based on the sales of its product in California. The California federal court held that it had jurisdiction over the defendant based on evidence that the defendant initiated the marketing plan used by its importer that focused on California as a key market for the defendant's product, and the fact that California was the single largest market of the defendant's products outside of France. *Id.* at \*6-7, *compare with*, William Rosenstein & Sons Co. v. BBI Produce, Inc., 123 F.Supp.2d 268, 274 (M.D. Pa. 2000) (corporate Florida strawberry seller's contacts with Pennsylvania were not sufficiently continuous and substantial to subject it to general personal jurisdiction in Pennsylvania where seller sold under 10% of its produce to Pennsylvania purchasers, did not have any person, bank account, property or business operation within Pennsylvania, and was easily subject to personal jurisdiction in Florida: "where the plaintiff may easily secure specific jurisdiction over the defendant in the state where the cause of

7

action arose, general jurisdiction is not necessary and courts should err on the side of finding no jurisdiction.").

In the instant case, defendants are not selling a product; they are enforcing a patent right, and there is no evidence that defendants focused on Illinois as a key area for licensees or that the testing in Illinois accounts for the largest (or even an unusually large) part of defendants' revenue from their patent. The court finds that the fact that defendants have granted licenses to a facility or facilities in Illinois is insufficient to confer general personal jurisdiction over defendants.

Plaintiffs' remaining arguments appear to concern this court's specific jurisdiction over Children's Hospital, and thus such factors must have a nexus to plaintiffs' claims. Burger King, 471 U.S. at 472 n. 15. The first issue is whether interactions between Greenberg and Matalon in Illinois, prior to the time Matalon became employed by Children's Hospital, can be used to support specific personal jurisdiction over Children's Hospital. Without citation to authority, plaintiffs argue that "the fact that the research continued in Florida once [Children's Hospital] lured Defendant Matalon away from UIC does not deprive Illinois courts of jurisdiction over this controversy." There are many flaws with plaintiffs' argument. First, in considering personal jurisdiction over Children's Hospital, this court must focus on the acts of Children's Hospital. As set forth above, defendants may not be forced to defend this lawsuit in Illinois because of the "unilateral activity of another party or third person." Burger King Corp., 471 U.S. at 475.

Plaintiffs have not cited – nor has the court found – authority for imputing to a corporate party, actions taken by an employee prior to the time of his or her employment for purposes of determining personal jurisdiction. In corporate acquisition cases, which may be analogized to the issue in the instant case, courts have held that actions taken by the predecessor corporation

8

generally cannot be attributed to the successor corporation. Generally, under Illinois and Florida[3] corporate acquisition law, successor corporations are not liable for the debts of their predecessor corporations, with four noted exceptions:

> [t]here are four exceptions to the general rule of successor corporate nonliability: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

Vernon v. Schuster, 688 N.E.2d 1172, 1175-1176 (Ill. 1997) (generally, a successor corporation is not liable for the debts of its predecessor corporation), *see also,* Laboratory Corp. of America v. Professional Recovery Network, 813 So.2d 266, 269 (Fla. Dist. Ct. App. 2002) ("Generally, Florida law does not impose the liabilities of a predecessor corporation on a successor corporation unless: (1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor").

Applying these same principles to consideration of personal jurisdiction over a successor corporation, the court in Johnston v. Pneumo Corp., 652 F.Supp. 1402, 1405 (S.D.Miss. 1987), rejected the plaintiff's argument that the actions of the predecessor be attributed to the successor corporation. The Johnston court declined to attribute or impute the contacts of the predecessor

---

[3] While defendants assert in their memorandum that Florida law applies to the merits of the plaintiffs' causes of action, plaintiffs discuss both Illinois and Florida law without making a choice of law analysis. Because the court is not reaching the merits of the plaintiffs' claims, it will not make a choice of law analysis, especially because the law of Florida and Illinois do not conflict.

9

corporation to the successor corporation reasoning: "[t]he law is established that each defendant's contacts with the forum state must be assessed on an individual basis." *Id.*

Similarly, in Viacom International, Inc. v. Melvin Simon Productions, Inc., 774 F.Supp. 858, 863-864 (S.D.N.Y. 1991), a licensee of film television rights sued its licensor and the assignee of the licensor seeking a declaration that the licensor improperly "collaborated" with the assignee in the settlement of an earlier litigation. The Viacom court held that the licensor's acts could not be attributed to the assignee for purposes of determining personal jurisdiction over the assignee:

> The prior acts of the third party, MSP, cannot be attributed to the defendant Koala even under Viacom's cited authorities. In Schenin v. Micro Copper Corp., 272 F.Supp. 523 (S.D.N.Y.1967), Micro had purchased all the assets of Vanura Uranium Inc., which then dissolved. Plaintiff argued that jurisdiction existed because Micro was Vanura's "successor-in-interest." The court rejected this claim: "Plaintiff's novel approach to the jurisdictional issue rests, in effect, on an untenable theory of involuntary, retroactive attribution. There exists no basis in law or reason to impute to Micro, for jurisdictional purposes, activities of Vanura in New York, such as they may have been."

Viacom, 774 F.Supp. at 863-864.

In the instant case, plaintiffs' "understanding" underlying their claims against Children's Hospital is based not on the research performed or any contract or binding agreement entered into between Matalon and plaintiffs,[4] but on plaintiffs' own past experiences with others. This "understanding" cannot be used to establish jurisdiction over Children's Hospital. *See generally*, Dehmlow v. Austin Fireworks, 963 F.2d 941, 946 (7th Cir. 1992) ("The defendant's conduct in relation to the forum state, not unilateral actions of the plaintiff, determine jurisdiction."). When Children's Hospital employed Matalon, plaintiffs' individual motivation and understanding of

---

[4] Notably, plaintiffs have not asserted a breach of contract claim against any of the defendants.

why they were supporting Matalon's research was not known to Matalon, and thus could not be disclosed to or known by Children's Hospital. Based on the facts before it, the court finds it cannot consider actions taken by Matalon or plaintiffs prior to such time as Matalon was employed by Children's Hospital in determining personal jurisdiction over Children's Hospital.

As to Matalon's continued affiliation with UIC after his employment with Children's Hospital, there is no evidence that Matalon's affiliation was as an agent of Children's Hospital. Further, because plaintiffs' claims do not arise from defendants' research on Canavan, there is no nexus between Matalon's affiliation with UIC and the claims against Children's Hospital.

Plaintiffs' next two arguments are based on testimony in Greenberg's affidavit that Greenberg engaged in certain activities originating in Chicago to assist Matalon with his research after Matalon was employed by Children's Hospital. This evidence includes telephone conversations with Matalon, in which Matalon requested samples be sent to Matalon and one instance in March 1994, in which Matalon sent Greenberg an informed consent form.[5] Generally, telephonic exchanges and mail correspondence from a foreign defendant outside the forum state to individuals within the forum state are insufficient to provide a basis for the exercise of personal jurisdiction under due process analysis.[6] *See*, Far West Capital, Inc. v.

---

[5] In its brief, plaintiffs also assert that defendants secured "research funding through Illinois contacts"; however, the only affidavit testimony of such funding is in David Green's affidavit, in which he states that he sent out a solicitation letter and raised over $40,000 for Matalon's research through contributions made to the United Leukodystrophy Foundation. A copy of Green's solicitation letter is attached and the letterhead states it is written and sent from Arlington Virginia. Further, any actions taken by parties other than Children's Hospital cannot be considered in determining personal jurisdiction in Illinois. While United Leukodystrophy Foundation is stated to maintain its principal place of business in Sycamore, Illinois, it is not a party to this action and plaintiffs have not cited any authority for taking into consideration contributions made from individuals or entities located in the forum state when determining personal jurisdiction over a foreign corporation.

[6] The court notes that there is an exception when the telephonic or facsimile message sent constitutes an intentional tort. *Compare*, Heritage House Restaurants, Inc. v. Continental Funding Group, Inc, 906 F.2d 276, 282 (7th Cir. 1990) (nonresident defendant's alleged misrepresentation during phone conversation that

11

Towne, 46 F.3d 1071, 1077 (10th Cir. 1995) ("It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts"); Stover v. O'Connell Associates, Inc., 84 F.3d 132, 137(4th Cir. 1996); Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc., 982 F.Supp. 350, 353-354 (D.Md. 1997) (Maryland district court did not have personal jurisdiction over chain of California camera stores in suit alleging breach of contract to sell business to national camera chain where California defendant's only contacts with Maryland were exchanges of correspondence and telephone conversations with Maryland representatives of the plaintiff national chain).

While distinguishable in its facts, the rationale set forth by the Fourth Circuit in Stover appears significantly relevant to the instant case in which Matalon, following his employment by Children's Hospital, solicited and received hundreds if not thousands of samples from plaintiffs from numerous jurisdictions outside Illinois, including New York, Iowa and Virginia:

> Ordering a product or service by telephone from a company in a different state does not subject the customer to that state's jurisdiction. While it is true that the electronic connection transports the customer's order for the product or service into the forum state, thereby prompting a response, such conduct does not establish the customer's "presence" in that jurisdiction. On the contrary, the use of a telephone to facilitate transactions between remote locations serves as an *alternative* to presence. To

---

entire amount of Illinois corporation's $140,000 deposit with savings and loan would be secured for repayment brought defendant within Illinois long-arm statute as to misrepresentation cause of action and alleged violation of Illinois Consumer Fraud and Deceptive Trade Practices Act where phone conversation was the basis for the alleged tort), *with*, Pendelton v. Germino, No. 95 C 2350, 1995 WL 493449 at *8 (N.D.Ill. Aug. 15, 1995) (noting that "[a] single telephone call into Illinois can give rise to Illinois jurisdiction as long as the call constitutes the commission of a tortuous act within Illinois", court held that foreign defendant's alleged "repeated phone calls" to plaintiff in Illinois did not give rise to jurisdiction because the calls themselves did not constitute tortuous acts in Illinois). In the instant case, plaintiffs' claims are based on defendants' restrictive licensing efforts which are not alleged to have been committed or furthered through telephone conversations or documents sent to Greenberg in Illinois. Further, the single consent form sent to Illinois was in March 1994. (Greenberg Aff. ¶11(c)). Defendants did not even apply for a patent until November 1994 (Compl. ¶ 28) and did not initiate restrictive licensing, the basis underlying plaintiffs' claims against Children's Hospital, until November 1998 (Compl. ¶29), all occurring after the time the consent form was sent to Greenberg in Illinois.

12

conclude that such activity establishes presence in a state would upset generally held expectations, and redefine the nature of state sovereignty.

Stover, 84 F.3d at 137 (*emphasis in original and citations omitted*).

Following plaintiffs' argument, Children's Hospital would be subject to personal jurisdiction in every jurisdiction where a voluntary participant who agreed to send samples to Matalon resided. Based on any lack of precedent for such a ruling and the precedents set forth above, this court holds that Matalon's telephonic and mail communications with Greenberg in Illinois are insufficient to constitute minimum contacts, and thus do not support finding personal jurisdiction over Children's Hospital.

The court further notes there are public policy reasons that support such a ruling. There remain many incurable diseases for which researchers and research facilities are working towards finding a cure, and it is imperative for such research that these facilities receive samples from without their jurisdictions. It would put an undue burden and potentially "creat[e] disincentives to the conduct of socially beneficial research" to hold that researchers must bear the cost of potentially litigating claims by unhappy donors in every jurisdiction from which they have received samples. John Moore v. Regents of University of California, 793 P.2d 479, 494-495 (Cal. 1990).

In John Moore, the California Supreme Court refused to extend the strict liability tort of conversion to impose conversion liability for the use of human cells in medical research. The John Moore court reasoned that it was against public policy to impose such strict liability on potentially innocent parties "whether or not the particular defendant participated in, or knew of, the inadequate disclosures that violated the patient's right to make an informed decision,"

13

holding that the "exchange of scientific materials, which still is relatively free and efficient, will surely be compromised if each cell sample becomes the potential subject matter of a lawsuit." *Id.* This court finds that the same policy reasons apply in the instant case to preclude allowing the mailing of scientific samples from the forum jurisdiction to be used to establish personal jurisdiction over a foreign research facility that has not otherwise conducted research or established any physical connection to the forum state.

The final contact plaintiffs assert establishes personal jurisdiction over Children's Hospital is the statement in Greenberg's affidavit that in the early 1990s, while at a yearly conference of the United Leukodystrophy Foundation held in Sycamore, Illinois, Matalon "approached [Greenberg] with a grant proposal for further Canavan research funding from NTSAD and asked [Greenberg] to submit it for review." Even assuming Matalon's solicitation of Greenberg's aid in obtaining funds from the New York organization was on behalf of Children's Hospital, the seeking of funds to continue Matalon's research into Canavan disease is not related to plaintiffs' claims against Children's Hospital, which are not based on defendants' research. Further, it is constitutionally uncertain that personal jurisdiction can be found on this single incident alone.

Viewing the evidence before it in a light most favorable to plaintiffs, the court finds there is insufficient evidence that Children's Hospital "purposefully availed" itself of the privilege of conducting activities within Illinois, such that it could "reasonably anticipate being hailed" into this court. Worldwide Volkswagon, 444 U.S. at 297.

Even if this single instance supported finding such jurisdiction, which the court does not find, this instance also occurred in the sole locale in which venue can be based for the claims

against Children's Hospital pursuant to 28 U.S.C. § 1391(a).[7] Accordingly, because Sycamore is not within this district, Children's Hospital's motion to dismiss for lack of venue is equally meritorious. Under the facts of this case, however, the court has determined to exercise its discretion under 28 U.S.C. § 1406(a) to transfer this case to the Southern District of Florida where all plaintiffs will have personal jurisdiction and venue over all defendants.

## TRANSFER PURSUANT TO §1406(a)

Under § 1406(a),[8] this court may transfer this action even if its lacks personal jurisdiction or venue over the parties and action. *See*, Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (U.S. 1962); Spherion Corp. v. Cincinnati Financial Corp., 183 F.Supp.2d 1052, 1056-1057 (N.D.Ill. 2002). The Supreme Court has explained the "interest of justice" requirement of the statute in Goldlawr, 369 U.S. at 466-467:

> The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the

---

[7] Venue for claims filed pursuant to diversity jurisdiction is governed by § 1391(a) which provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

[8] Section §1406(a) provides:

> (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. §1406(a).

15

court in which it was filed had personal jurisdiction over the defendants or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years--that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities. 'It would at least partially frustrate this enlightened congressional objective to import ambiguities into § 1406(a) which do not exist in the language Congress used to achieve the procedural reform it desired. (*Citations omitted*).

*See also*, Spherion, 183 F.Supp.2d at 1059-1060 (*citations omitted*)("Transfer is ordinarily in the interest of justice because dismissal of an action that could be brought elsewhere is 'time consuming' and may be 'justice-defeating.'").

Based on the fact that this case has been pending for over a year and a half and the parties have briefed the merits of the case, the court finds that it is in the interest of justice to transfer this action. Accordingly, the court orders this action transferred to the United States District Court for the Southern District of Florida, where unquestionably all plaintiffs have both personal jurisdiction and venue over all defendants. Defendants' motions to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief may be granted, or in the alternative, to transfer venue of the case pursuant to 28 U.S.C. § 1404(a), to United States

District Court for the Southern District of Florida, and plaintiffs' motion to strike affidavit of Steven Melnick are denied without prejudice as moot.

**ENTER:** **July 8, 2002**

Robert W. Gettleman
United States District Judge